GILLESPIE, Presiding Justice:
The principal question in this eminent domain case is whether the evidence is sufficient to justify the amount of the verdict. We hold it is and affirm.
The Mississippi Power Company (hereinafter Condemnor) filed its application to condemn a right of way across the land of W. Clyde Head (hereinafter Owner). A Special Court of Eminent Domain was organized before which the case was tried apd Owner was awarded damages of $6,000. *25 Owner appealed to the Circuit Court of Hancock County where the case was tried de novo and the jury awarded Owner damages of $10,000. Condemnor appealed to this Court.
The first question is whether the verdict is so excessive as to evince passion, bias, and prejudice on the part of the jury. We state the facts in the light most favorable to Owner, as we must in view of the jury’s verdict.
Owner’s three acre tract of land is bounded on the west by a straight line running north and south for a distance of 390 feet, on the south by a straight line running east and west for a distance of 326 feet, with a 750 foot frontage on Bayou Coco bounding the tract on the east and north. Bayou Coco is navigable for small boats and connects with the Jordan River. The land is 12 miles from Pass Christian, 14 miles from Bay St. Louis and one and a half miles from the village of Kiln. The property is about a mile and a half off a black top road and is reached by a county dirt road and a private easement across property adjacent to Owner’s. The improvements consist of a house, small storage house, and two piers on Bayou Coco. The camp style house consists of 1,549 square feet of space. It has two bedrooms, one bath, a kitchen and living room with open fireplace and screen front and rear porches. The house is built on a knoll. A large part of the tract is low, and not suitable for building. Prior to the present proceeding the Condemnor had a hundred foot easement across the northerly part of the tract on which there was a power line installed on creosote poles. This easement was on the property when Owner purchased it in 1956. The easement condemned in the present proceeding is adjacent to and south of the old easement.
Condemnor acquired in the present proceedings a right of way running from northeast to southeast across the Owner’s tract. The easement is 87.5 feet wide and about 300 feet long and embraces .06 acres of land. The Condemnor also condemned the right to cut danger trees outside the right of way. At the time the case was tried in the circuit court the new transmission line had been constructed and one tower is located on Owner’s land. This tower is a “V” with the legs pulled together at the ground and widens out at the top to forty nine and a half feet. It supports a total of five wires carrying 230 thousand volts. The tower is braced on Owner’s land with four guy wires. It is one hundred feet high and the high voltage lines are seventy feet off the ground. The right of way runs within eight and a half feet of the house. The nearest conductor is thirty seven and a half feet from the edge of the right of way and forty six feet from the house. The tower itself is sixty two and a half feet from the edge of the right of way and seventy one feet from the house. If the tower should fall in the direction of the house, it would strike the house. The proof showed however, that this tower is the latest and safest used in the industry and if it should fall the power would be cut off by a circuit breaker within l/20th of a second.
In clearing the right of way the Con-demnor cut seventy five to one hundred holly, pine, cedar and oak trees and youpon bushes that had previously screened the old power line from the house. Three or four “danger trees” were cut outside the right of way near the house. The house was built on high ground as far toward the southeast frontage on the bayou as possible. The right of way condemned in this proceeding embraces a substantial part of the high ground in the tract. Owner stated that he had left only about one quarter of usable high ground where the house is located.
Each party offered the testimony of two real estate appraisers, all of whom had considerable experience. All attempted to justify their appraisals by showing recent sales of comparable property, but in our opinion, it would add nothing to this opinion to give details of their testimony in this regard.
Condemnor’s appraiser Wedemeyer gave the following values: land before the tak *26 ing, $2,250, improvements $11,385, total before value $13,635; total value after the taking, $8,615, with resulting damages of $5,020.
Condemnor’s appraiser Carmichael gave the following values: land before the taking $1,800, improvements $7,500, total before taking $9,300; total value after the taking $6,800, with resulting damages of $2,500.
Owner’s appraiser Burns gave the following values: land before the taking $10,442, improvements $11,450, total before taking value of $21,892; total value after taking of $10,600, with resulting damages of $11,-292.
Owner’s appraiser Tate gave the following values: land before the taking $11,040, improvements $11,460, total before taking value $22,500; total value after taking of $9,000, with a resulting damage of $13,500.
Owner testified to figures resulting in damages of $17,000.
It will be noted that of the four appraisers all but Carmichael gave almost the same value for the improvements before the taking. The proof is clear that the improvements were worth in excess of $11,000. Undoubtedly, Owner’s appraisers as well as the Owner himself, appraised the before taking value of the land at more than it was worth. On the other hand, it is just as obvious that Condemnor’s appraisers undervalued the before taking value of the land, for both appraised the before taking value of the land at less than the $2,400 Owner paid for it in 1956, with the old easement then on the land. In view of the large increases in real estate values generally since 1956 and the fact that NASA has recently acquired a large part of Hancock County for a test facility, it appears that the jury was warranted in rejecting the values estimated by Wedemeyer and Carmichael on the before taking value of the land itself. It is also noted that accepting Wedemeyer’s value of the land and improvements before the taking and Carmichael’s total value after the taking, would result in damages of $6,835. It will also be noted that the difference between Condemnor’s two appraisers of the total before taking value is $4,300, which is a variation nearly equal to the difference between the jury’s verdict and Wedemeyer’s estimate of the damages. All this indicates that there is no precise yardstick for determining values to land.
We are inclined to believe that the verdict in this case is for more than the damages sustained, but in this case and on this record we cannot be certain. We cannot say that the jury was motivated by passion, bias and prejudice, or, to state it more realistically, that the jury did not respond to reason and the evidence. We are therefore of the opinion that this Court cannot reverse this case on the ground that the verdict is excessive without substituting its judgment for that of the jury and thereby invade the province of the jury.
Appellant next complains of an instruction given Owner to the general effect that Owner’s property should be valued on the basis of its highest and best use, not necessarily on the use being made of it, but due consideration should be given to the uses to which the property was plainly adapted and was available for at the time of the taking. Condemnor contends that this instruction is not supported by the evidence and that it allowed the jury to speculate on the value of the property. The owner was using the property at the time of the trial as a weekend home or camp, but he had previously used it as a permanent home. We are of the opinion that the evidence justified the instruction, because Condemn- or’s appraiser had referred to the property as a campsite or cottage. It was shown that the property was also suitable for permanent home purposes. The giving of this instruction was not reversible error. We are of the opinion that the giving of the instruction does no violence to Miss. State Highway Comm. v. Peterson, 242 Miss. 202, 134 So.2d 743 (1961).
*27 The trial court refused the following instruction requested by the Condemnor:
The Court instructs the jury for the Plaintiff that the public use to which the lands of the Defendant described in the application are to be put is that of a right-of-way easement over and across said land, for a power line for transmission of electric power, including the right to cut danger trees that would fall within ten feet of the power line, as set forth in the application, and is not a fee simple taking, and that in arriving at your verdict as to the amount of damages to which the defendant, Clyde Head, is entitled you should take into consideration the fact that this is not a fee simple taking and the further right of the defendant to use of said land in a manner not inconsistent with the easement taken.
We are of the opinion the court properly refused this instruction. It was proper to show by the evidence and in the application filed by Condemnor the uses to he made of the property and what Owner could do after the taking. In Miss. State Highway Comm. v. Stout, 242 Miss. 208, 134 So.2d 467 (1961), the court held that it was error to single out in an instruction a particular element of damage. It was held that this was an unauthorized comment in violation of Mississippi Code 1942 Annotated, Section 1530 (1956), and also singled out and gave undue prominence to an element of damage, resulting in duplication. The converse of the situation would result if the above instruction had been given. It would have singled out a factor tending to reduce damages. As stated in Stoüt and later paraphrased in White v. Mississippi Power Co., 252 Miss. 97, 171 So.2d 312 (1965),
“It should repeatedly be emphasized that subjects which are relevant as testimony are not thereby appropriate for instructions. Although every factor affecting a depreciated market value may be put in evidence, the ultimate issue is the extent of their cumulative impact upon such total valuation. When they are made subjects of special comment in instructions, there is not only a violation of Code of 1942, Section 1530, but this results in duplication of damages. * * * and the procedure in this sort of case would be simpler and safer if the juries could be instructed that the damage is to be computed upon the basis of the difference between the fair market value of the entire property affected before and after the taking. The several items of damage should be left to the fields of testimony and argument.” Wheeler v. Mississippi State Highway Commission, 212 Miss. 606, 55 So.2d 225, 227. (242 Miss, at 221, 222, 134 So.2d at 472.)
Other questions are raised and after careful consideration of all the assignments of error and the record as a whole, we are of the opinion that the case should be affirmed.
Affirmed.
JONES, PATTERSON, INZER AND ROBERTSON, JT-, concur.